UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

LUCIEN CATANIA,

                                        Plaintiff,

        vs.                                              5:19-CV-133
                                                         (MAD/TWD)

FIRST UNUM LIFE INS. CO. and
C.H.A.G. ANESTHESIA, PC,

                                        Defendants.

_____

APPEARANCES:                             OF COUNSEL:

OLINSKY LAW GROUP                        EDWARD A. WICKLUND, ESQ.
250 South Clinton Street                 HOWARD D. OLINSKY, ESQ.
Suite 210                                MELISSA A. PALMER, ESQ.
Syracuse, New York 13202
Attorneys for Plaintiff

WHITE AND WILLIAMS LLP                   ROBERT WRIGHT, ESQ.
7 Times Square                           ZAARA BAJWA NAZIR, ESQ.
Suite 2900
New York, New York 10036
Attorneys for Defendants

Mae A. D'Agostino, U.S. District Judge:

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

        Plaintiff, Dr. Lucien Catania ("Plaintiff"), commenced this action against First Unum Life

Insurance Company and C.H.A.G. Anesthesia, PC on February 1, 2019.  *See* Dkt. No. 1.

Plaintiff's claims arise under the Employee Retirement Income Security Act of 1974 ("ERISA"),

28 U.S.C. §§ 1001, *et seq.*  Plaintiff, an anesthesiologist, claims that he was wrongfully denied

long term disability ("LTD") benefits after two car accidents that led to significant back pain.  *See*

Dkt. No. 1 at ¶ 13.  Defendant C.H.A.G. Anesthesia, PC ("Defendant C.H.A.G.") was Plaintiff's

employer, as well as the LTD Plan Administrator.  *See* Dkt. No. 47-2 at ¶¶ 2, 17.  Defendant First

Unum Life Insurance Company ("Defendant Unum") provided the relevant group LTD policy.

*See id.* at ¶¶ 3, 4.

Currently before the Court are the parties' cross-motions for summary judgment.  *See* Dkt.

Nos. 45, 46.  For the following reasons, Defendants' motion is granted and Plaintiff's is denied.

## II. BACKGROUND

The following facts are undisputed unless otherwise noted.  On August 31, 2015, Plaintiff

was hired by C.H.A.G. Anesthesia as an anesthesiologist and physician.  *See* Dkt. No. 47-2 at ¶

17.  As an anesthesiologist at C.H.A.G Anesthesia, Plaintiff's employment contract included the

following language:

> Physician shall work a schedule determined by Group, which shall
> generally consist of performing cases Mondays through Friday from
> 7:30 a.m. through 4:00 p.m. (currently on Wednesday cases run
> until 4:30 p.m.).  Physician shall arrive at the workplace sufficiently
> early to attend to patient(s) and to set up his room(s).  Physician
> may be requested at times to stay later for regional blocks if
> requested.  Every reasonable attempt will be made to allow
> Physician to leave in a timely fashion.
>
> Physician shall take call coverage six (6) weekends per year (7:30
> a.m. on Saturday until 7:30 a.m. on Monday) and 24 weeknights of
> call per year . . . .)

*Id.* at ¶ 18.

Plaintiff is a participant in the C.H.A.G. Anesthesia, PC Long-Term Disability Plan ("LTD

Plan").  *See id.* at ¶ 1; *see also* F/U-POL-000001A–46A.  Defendant C.H.A.G. Anesthesia serves

as the Plan Administrator, and delegated Defendant Unum to assist in determining whether

enrolled employees under the LTD Plan are eligible for benefits.  *See* Dkt. No. 47-2 at ¶ 2.

The LTD Plan provides the following definition for "disability":

2

### *HOW DOES UNUM DEFINE DISABILITY?*

You are disabled when Unum determines that due to your **sickness** or **injury**:

1.  You are unable to perform the **material and substantial duties** of your **regular occupation** and are not working in your regular occupation or any other occupation

or,

2.  You are unable to perform one or more of the material and substantial duties of your regular occupation, and you have a 20% or more loss in your **indexed monthly earnings** while working in your regular occupation or in any occupation.

You must be under the regular care of a physician in order to be considered disabled.

F/U-POL-000017A.

The LTD Plan provides that "material and substantial duties" are defined as duties that:

- are normally required for the performance of your regular occupation; and
- cannot be reasonably omitted or modified.

F/U-POL-000037A.

The LTD Plan provides that a "regular occupation" is defined as:

the occupation you are routinely performing when your disability begins.

For physicians, "regular occupation" means the general or sub-specialty in which you are practicing when your disability begins and for which you are certified by the American Board of Medical Specialties.  If the sub-specialty in which you are practicing is not recognized by the American Board of Medical Specialties, you will be considered practicing in the general specialty category.

For all other employees, your regular occupation means the material and substantial occupational duties as recognized in the general workplace, that you were routinely performing prior to becoming disabled.

> Unum will look at your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer or at a specific location.

F/U-POL-000039A.

The LTD Plan, with respect to how long a claimant must be disabled before being eligible to receive LTD benefits, provides as follows:

> You must be continuously disabled through your **elimination period**.  The days that your are not disabled will not count toward your elimination period.
>
> Your elimination period is 180 days.
>
> In addition, if you return to work while satisfying your elimination period, and are no longer disabled, you may satisfy your elimination period within the **accumulation period**.  You do not need to be continuously disabled through your elimination period if you are satisfying your elimination period under this provision.  If you do not satisfy the elimination period within the accumulation period, a new period of disability will begin.
>
> Your accumulation period is 360 days.
>
> You are not required to have a 20% or more loss in your indexed monthly earnings due to the same injury or sickness to be considered disabled during the elimination period.
>
> ***CAN YOU SATISFY YOUR ELIMINATION PERIOD IF YOU ARE WORKING?***
>
> Yes.  If you are working while you are disabled, the days you are disabled will count toward your elimination period.

F/U-POL-000018A.

The LTD Plan provides the following definitions for the above-referenced periods:

> **ACCUMULATION PERIOD** means the period of time from the date disability begins during which you must satisfy the elimination period.

* * *

>**ELIMINATION PERIOD** means a period of continuous disability
>which must be satisfied before you are eligible to receive benefits
>from Unum.

F/U-POL-000036A.

Plaintiff indicates that his history of back pain relates to motor vehicle accidents on January 19, 2013 and August 25, 2016. *See* F/U-CL-LTD-000499, F/U-CL-LTD-000523. On February 13, 2017, Dr. Matthew E. Cunningham at the Hospital for Special Surgery performed L5 & S1 laminectomy and decompression surgery on Plaintiff. *See* F/U-CL-LTD-000230. After his surgery, Plaintiff was out of work from February 13, 2017, until March 6, 2017. *See* F/U-CL-LTD-000096–97. On February 28, 2017, Plaintiff submitted notice and proof of his disability claim. *See* F/U-CL-LTD-000108–09. Plaintiff, if found disabled, would have been entitled to start receipt of LTD benefits on August 12, 2017, the day after the 180-day elimination period required to be satisfied under the Policy. *See* F/U-POL-000018A.

Six weeks after his surgery, on March 29, 2017, Plaintiff met with Dr. Cunningham. *See* F/U-CL-LTD-000263–75. On March 30, 2017, Plaintiff met with Richard Lafrance, MSPT, for his initial physical therapy evaluation, and Plaintiff underwent several sessions of physical therapy from April 4, 2017 through May 19, 2017. *See* F/U-CL-LTD-000324–27, F/U-CL-LTD-000330–57. On May 17, 2017, Plaintiff attended a three-month post-surgery appointment at Dr. Cunningham's office. *See* F/U-CL-LTD-000276–84. On August 16, 2017, Plaintiff attended a six-month post-surgery appointment at Dr. Cunningham's office. *See* F/U-CL-LTD-000225  In an employee statement signed by Plaintiff on July 20, 2017, he indicated that the hours he worked per week were "45 - restricted duty." F/U-CL-LTD-000097. Dr. Cunningham submitted an attending physician statement on October 24, 2017, stating that Plaintiff's "symptoms also worsen

during evening and nighttime at which point we recommend working hours of 8 hours per day and daytime only." F/U-CL-LTD-000091. Defendant C.H.A.G. submitted an employer statement on October 25, 2017, which stated that Plaintiff was "unable to work his normal, beeper calls or OT, due to doctors orders (see employment agreement)." F/U-CL-LTD-000045.

Defendant Unum underwent a claim review to determine: (1) "What are the duties of [Plaintiff's] regular occupation?"; and (2) "Does the medical information support [that Plaintiff] is precluded from performing the material and substantial duties of his regular occupation from 2/13/2017 through 8/11/2017 and beyond?" F/U-CL-LTD-000206. This review included a vocational review by Ashley Staples, an independent medical examination by Dr. George Hochreiter (ordered by another insurance company), an accounting of Plaintiff's monthly pre-disability earnings ($33,409.98), a calculation of Plaintiff's benefits if he were considered to be disabled, a medical review by Sherry Roy, MSN, RN, correspondence between Dr. Cunningham and Dr. Richard Maguire, a medical review by Dr. Maguire, and a medical review by designated medical officer Dr. Frank Kanovsky. *See* F/U-CL-LTD-000206–7, F/U-CL-LTD-000256–58, F/U-CL-LTD-000301, F/U-CL-LTD-000306, F/U-CL-LTD-000391–92, F/U-CL-LTD-000395–97, F/U-CL-LTD-000405–06, F/U-CL-LTD-000415–19, F/U-CL-LTD-000421–26.

On February 2, 2018, Defendant Unum advised Plaintiff by letter that Defendant Unum was not approving payment for LTD benefits. *See* F/U-CL-LTD-000432–36. On May 17, 2018, Defendant Unum received a letter of representation for Plaintiff from his attorney that indicated an appeal would be submitted on Plaintiff's behalf. *See* F/U-CL-LTD-000478–80. On August 1, 2018, Plaintiff's attorney submitted a letter of appeal to Defendant Unum, as well as additional medical information from Dr. Cunningham, Dr. Ian Daly, and an additional independent medical examination. *See* F/U-CL-LTD-000492–725, F/U-CL-LTD-000600–16. On August 6, 2018,

Defendant Unum sent a letter to Plaintiff's attorney acknowledging the appeal. *See* F/U-CL-LTD-000492–730.

On August 9, 2018, Defendant Unum referred Plaintiff's appeal for review to determine: (1) "Do the records support [restrictions/limitations] from working more than 45 hrs/wk in the activity level below?"; and (2) "Do the records support specific restrictions from working weekends or being on call?"  F/U-CL-LTD-000752.  On August 17, 2018, an additional vocational review was ordered to address: (1) "When considering EE's occupation as it is performed in the national economy, is there a basis to find that the occupation's associated tasks and commitments require EE to routinely work in excess of 40 hours per week?"; (2) "When considering EE's occupation as it is performed in the national economy, is there a basis to find that being on-call (nights/weekends) is a material and substantial duty of the occupation?"; and (3) "Is there a change/increase in the physical demands of the occupation when working later hours such as overnight and/or weekend versus daytime hours M-F?"  F-U-CL-LTD-000765.  An additional medical review was also ordered at the same time to address: (1) "Do the records support [restrictions/limitations] from working more than 45 hrs/wk in the activity level below from 2/13/17 through 8/11/17?"; and (2) "Do the records support specific restrictions from working weekends or being on call?"  *Id.*  A vocational review was completed on August 22, 2018.  *See* F/U-CL-LTD-000768.  A medical review was also completed on August 22, 2018 by Dr. Wade Penny.  *See* F/U-CL-LTD-000769–76.

On September 4, 2018, Defendant Unum sent a letter to Plaintiff's attorney advising that the appeal review determined that the decision on Plaintiff's claim was correct as Plaintiff's "medical condition did not preclude him from performing his occupation at full capacity including working on call overnight and weekends, prior to the expiration of the elimination period on

August 11, 2017.  [Plaintiff] did not remain disabled through the elimination period as required by the policy to become eligible for benefits."  F/U-CL-LTD-000781.

### III. DISCUSSION

#### A.    Standard of Review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* at 36–37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleadings.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56 (c)), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of New York.*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

8

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir. 2005) (quotation omitted).  "However, '[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff.'" *Id.* at 554 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)) (emphasis and alterations in original).  "To defeat summary judgment, therefore, nonmoving parties 'must do more than simply show that there is some metaphysical doubt as to the material facts,' . . . and they 'may not rely on conclusory allegations or unsubstantiated speculation.'" *Id.* (quotations omitted).

"The same standard applies where, as here, the parties filed cross-motions for summary judgment. . . ." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (citing *Terwilliger v. Terwilliger*, 206 F.3d 240, 244 (2d Cir. 2000)).  "[W]hen both parties move for summary judgment, asserting the absence of any genuine issues of material fact, a court need not enter judgment for either party.  Rather, each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Id.* (citing *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981)).

"'It is appropriate for courts reviewing a challenge of denial of benefits under ERISA to do so on a motion for summary judgment, which provides an appropriate vehicle whereby the Court can apply substantive ERISA law to the administrative record.'" *Cohen v. Liberty Mut. Grp. Inc.*, 380 F. Supp. 3d 363, 376 (S.D.N.Y. 2013) (quoting *Ramsteck v. Aetna Life Ins. Co.*, No. 08-CV-0012, 2009 WL 1796999, *6 (E.D.N.Y. June 24, 2009)) (other quotation omitted).  "'In such an action the contours guiding the court's disposition of the summary judgment motion are

9

necessarily shaped through the application of the substantive law of ERISA.'" *Id.* (quoting *Alfano v. CIGNA Life Ins. Co. of N.Y.*, No. 07 Civ. 9661, 2009 WL 222351, *12 (S.D.N.Y. Jan. 30, 2009)).

**B.    ERISA**

ERISA provides that a person denied benefits under an employee benefits plan may challenge that denial in federal court. *See* 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought . . . to recover benefits due to [the plaintiff] under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan").  To proceed with a claim in federal court, a party must first exhaust administrative remedies.  *See Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993). Exhaustion consists of "only those administrative appeals provided for in the relevant plan or policy." *Id.*

"ERISA itself 'does not set out the applicable standard of review for actions challenging benefit eligibility determinations.'" *Cohen*, 830 F. Supp. 3d at 376 (quoting *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002)).  Instead, "'substantive ERISA law determines the proper standard of review that the Court should apply in reviewing the decision of the plan administrator.'" *Id.* (quoting *Gannon v. Aeta Life Ins. Co.*, No. 05 Civ. 2160, 2007 WL 2844869, *6 (S.D.N.Y. Sept. 28, 2007)).

The Supreme Court has held that "'a denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Fay*, 287 F.3d at 103-04 (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  "Where a plan grants the administrator discretionary authority

to determine eligibility benefits, the court may use a deferential standard of review." *Cohen*, 380 F. Supp. 3d at 376 (citing *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 132 (2d Cir. 2008)). "Even where a plan grants the administrator such authority, a court will conduct *de novo* review of a claim if a plan fails 'to comply with the Department of Labor's claims-procedure regulation . . . unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the regulation in the processing of a particular claim was inadvertent *and* harmless.'" *Id.* (quoting *Halo v. Yale Health Plan, Dir. of Benefits & Records Yale Univ.*, 819 F.3d 42, 45 (2d Cir. 2016) (citing 29 C.F.R. § 2560.503-1)) (emphasis in original). Where "plan language categorically states that certain benefits will be provided, *de novo* review is appropriate because unambiguous language leaves no room for the exercise of discretion." *O'Neil v. Retirement Plan for Salaried Employees of RKO General, Inc*., 37 F.3d 55, 59 (2d Cir. 1994).

After examining the LTD Plan, the Court concludes that the relevant provisions are clear and unambiguous. Moreover, the parties themselves agree that the Court should conduct *de novo* review. *See* Dkt. No. 45-1 at 8; Dkt. No. 47-1 at 15–17. Consequently, Defendants' denial of benefits is subject to *de novo* review.

## C.    Application

As indicated, the parties have filed cross-motions for summary judgment. Plaintiff's motion requests that the Court reverse Defendant Unum's denial of his long term disability claim and direct the payment of his benefits, as well as award him costs and reasonable attorneys' fees, because Defendant Unum erred in determining that Plaintiff was not entitled to benefits under the LTD Plan. *See* Dkt. No. 47-1. Defendants request that summary judgment be entered in their favor dismissing Plaintiff's complaint and leaving Defendant Unum's determination intact because

the administrative record supports the determination that Plaintiff did not meet the terms,

definitions, and requirements of the LTD Plan.  *See* Dkt. No. 45-1.

### 1. The Court Will Limit Its Review to the Administrative Record

The Court must next consider the scope of the record on review.  Plaintiff relies on

evidence outside of the administrative record in support of his motion, namely, the summary plan

description, as well as two resumes of Unum's hired physicians.  *See* Dkt. No. 47-3 at ¶ 8.

Defendants contend that consideration of these materials is improper.  *See* Dkt. No. 54 at 2; Dkt.

No. 56 at 3.

"The legal standard for considering evidence outside the administrative record depends on

the standard of review to be applied to the claim.  For a *de novo* review of the administrator's

decision, 'the district court "ought not" to accept additional evidence absent "good cause".'" *Parisi*

*v. Unumprovident Corp.*, No. 3:03CV01425, 2007 WL 4554198, *8 (D. Conn. Dec. 21, 2007)

(quoting *Zervos v. Verizon N.Y., Inc.*, 277 F.3d 635, 646 (2d Cir. 2002)).  "'Good cause' to

supplement the record may exist when the plan administrator has a conflict of interest, or when

the claims review process suffers from procedural irregularities such as a lack of established

criteria for determining an appeal, a plan's practice to destroy or discard records, or a plan's failure

to state its reasons for denying a claim in its notices to a claimant." *Tritt v. Automatic Data*

*Processing Inc. Long Term Disability Plan*, No. 3:06-cv-2065, 2011 WL 282178, *1 (D. Conn.

Jan. 21, 2011) (citing *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288 (2d Cir. 2004); *Juliano*

*v. Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 289 (2d Cir. 2000)).

Plaintiff fails to allege good cause warranting consideration of this additional evidence.

He does not claim that the administrative record is inadequate to make a determination of his

disability.  First, Plaintiff requests that the Court examine a summary plan description.  However,

this document was amended and restated as of August 1, 2018, *see* Dkt. No. 47-5 at 3, which is after Plaintiff completed his disability claim form and after Unum initially denied Plaintiff's LTD benefits. *See* F/U-CL-LTD-000097, F/U-CL-LTD-000432.  While Plaintiff claims that it is "plainly obvious" this Court should consider this document, Plaintiff has not demonstrated that this iteration of the summary plan description governed Plaintiff's long term disability claim. *See* Dkt. No. 57 at 3.  Furthermore, even if the Court determined that this was the governing summary plan description, Plaintiff appears to reference the summary plan description to support a *de novo* review by this Court; as stated above, the Court need not consider the summary plan description to determine that this is the appropriate standard of review.

While Plaintiff also contends that the curricula vitae of two physicians are relevant because they "involve[] an aspect of fairness in the appeals process," the case law cited to is relevant to a review of a court conducting an arbitrary and capricious review, whereupon a court should evaluate potential conflicts of interest. *See* Dkt. No. 57 at 3–4.  The Court does not see how the curricula vitae of Drs. Kanovsky and Maguire help in determining the factual issue of whether Plaintiff was entitled to benefits under the LTD Plan, and Plaintiff has not demonstrated the required indicia of good cause for evaluating these documents under the standards of a *de novo* review. *See Tritt*, 2011 WL 282178, at *1.

There being no good cause to admit evidence outside the administrative record, the Court's decision will be based on that record alone.

### 2. *Analysis of the Merits*

Plaintiff has the burden of proving he is disabled under the terms of the LTD Plan. *See Paese v. Hartford Life and Acc. Ins. Co.*, 449 F.3d 435, 441 (2d Cir. 2006) (citing *Mario v. P&C Food Markets, Inc.*, 313 F.3d 758, 765 (2d Cir. 2002)).  "Because 'there is no right to a jury trial in

a suit brought to recover ERISA benefits, and thus the district court would have been the

factfinder at trial, the district court's task on a summary judgment motion – even in a nonjury case

– is to determine whether genuine issues exist for trial, not to make findings of fact.'" *Khan v.*

*Provident Life and Accident Ins. Co.*, No. 15-CV-00811A, 2017 WL 11309772, *18 (W.D.N.Y.

May 2, 2017) (quoting *O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116

(2d Cir. 2011)).  "It is, however, only where the parties consent to a bench trial on the parties'

submissions, stipulating to the administrative record and waiving the right to call witnesses, that

the district court may 'make explicit findings of fact and conclusions of law pursuant to Federal

Rule of Civil Procedure 52(a).'" *Id.* (quoting *O'Hara*, 642 F.3d at 116).  "Here, because the

parties have not stipulated to a summary trial or a bench trial on the papers, . . . the district court

[is] obliged to proceed in traditional summary judgment fashion." *Id.* (internal quotation marks

and citation omitted).  "Simply put, the court 'must determine whether [the plaintiff] presented

evidence from which a reasonable factfinder could conclude that she was disabled within the

meaning of the [Disability Policy].'" *Id.* (quoting *O'Hara*, 642 F.3d at 119) (other citations

omitted).  "Further, applying a *de novo* standard of review, a court gives no deference to the

administrator's decision, *O'Hara*, 642 F.3d at 116; *Masella v. Blue Cross & Blue Shield of*

*Connecticut, Inc.*, 936 F.2d 98, 103 (2d Cir. 1991); and does not determine whether the

administrator's decision was supported by sufficient evidence but instead decides only whether

there exists a genuine issue of material fact requiring trial.  *O'Hara*, 642 F.3d at 117." *Khan*, 2017

WL 11309772, at *18.

The Second Circuit has "long recognized that subjective complaints of disabling

conditions are not merely evidence of a disability, but are an 'important factor to be considered in

determining disability.'" *Miles v. Principal Life Ins. Co.*, 720 F.3d 472, 486 (2d Cir. 2013)

14

(quoting *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136 (2d Cir. 2001)).  "While a district court reviewing an administrator's decision *de novo* is not required to accept such complaints as credible, . . . it cannot [summarily] dismiss complaints of pain as legally insufficient evidence of disability." *Connors*, 272 F.3d at 136–37 (citations omitted); *see also Rivera v. Schweiker*, 717 F.2d 719, 724 (2d Cir. 1983) (citing the plaintiff's frequent complaints to his wife and neighbor of headaches and neck pains and his testimony about same as "overwhelming, substantial evidence" of the extent of plaintiff's pain); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) ("[T]he subjective evidence of appellant's pain, based on her own testimony and medical reports of examining physicians, is more than ample to establish her disability, if believed").

Notably, a "[p]laintiff's failure to present specific objective evidence cannot be cured by subjective  allegations. . . ."  *Topalian v. Hartford Life Ins. Co.*, 945 F. Supp. 2d 294, 349–50 (E.D.N.Y. 2013).  Indeed, it is well-settled that the plan administrator is "'not required to accept [a plaintiff's] subjective complaints in the absence of objective evidence supporting disability,'" because it is the plaintiff's burden to demonstrate his disability under the terms of the plan and it is reasonable for a plan administrator to require objective medical evidence to support any alleged physical limitations.  *Id.* at 350 (quotation and other citations omitted); *see also Ianniello v. Hartford Life & Accident Ins. Co.*, No. 10–CV–370, 2012 WL 314872, *3 (E.D.N.Y. Feb. 1, 2012), *aff'd*, 508 Fed. Appx. 17 (2d Cir. 2013); *Rund v. JPMorgan Chase Grp. Long Term Disability Plan*, 855 F. Supp. 2d 185, 204 (S.D.N.Y. 2012) ("[Plaintiff] submitted documentation that he suffered from pain in his hand and knuckles but he failed to provide specific objective evidence as to how that impairment affects his functional capacity"); *Schnur v. CTC Commc'ns Corp. Grp. Disability Plan*, No. 05–CV–3297, 2010 WL 1253481, *11 (S.D.N.Y. Mar. 29, 2010)

("[A] distinction exists between the amount of fatigue or pain an individual experiences, which is completely subjective, and how much an individual's degree of pain or fatigue limits his functional capabilities, which can be objectively measured"), *aff'd*, 413 Fed. Appx. 377 (2d Cir. 2011).  "A reviewing court is obliged to determine whether a plan administrator has given sufficient attention to [the claimant's] subjective complaints . . .  before determining that they were not supported by objective evidence."  *Miles*, 720 F.3d at 486 (internal citation and quotation marks omitted).

Plaintiff is correct in saying that the LTD Plan does not state that a specific objective finding or diagnosis is required.  *See* Dkt. No. 57 at 5.  However, the LTD Plan does require Plaintiff to submit "proof" of his claim, which must show, *inter alia*, the cause and extent of his disability.  *See* F/U-POL-000008A–9A.  "'[T]he very concept of proof connotes objectivity.'  Thus, 'it is hardly unreasonable for the administrator to require an objective component to such proof.'"  *Parisi*, 2007 WL 4554198, at *10 (quoting *Maniatty v. Unumprovident Corp.*, 218 F. Supp. 2d 500, 503 (S.D.N.Y. 2002), *aff'd*, 62 Fed. Appx. 413 (2d Cir. 2003)).  "Numerous courts, both within and without this Circuit, have followed *Maniatty* in this regard."  *Id.*

The Court agrees with Defendants that, at both the original and appeal review levels, it was properly determined that Plaintiff was able to perform the duties of his occupation within the 180-day elimination period, and that he did not meet the requirements for a residual disability.  *See* Dkt. No. 45-1 at 10.

Dr. Matthew E. Cunningham, the surgeon who performed Plaintiff's February 13, 2017 surgery, examined Plaintiff on March 29, 2017, six weeks after the surgery.  *See* F/U-CL-LTD-000265.  Dr. Cunningham noted that Plaintiff "describes that when he wakes in the morning the symptoms are minimal to gone, but that as the day wears on from the morning until evening the

symptoms progressively worsened.  He describes symptoms somewhat more notable since he is back to work, and he is fearful that the symptoms will become even more noteworthy in that he is to be tak[ing] call again in the upcoming weeks (increasing his typical 45 hour work week to closer to 90 hours per week)."  *See id.*  However, a physician's assistant at the same practice made a notation on the same date that "[p]atient states that he has been doing very well, and has participating in snowshoeing, and in hiking activities and has significantly felt okay if they are done any short period of time.  Patient today states that compared to his preop symptoms, . . . that they are significantly better. . . .  He states that when he bends, or has had a long day at work, the symptoms are significantly aggravated, but significantly improved and practically dissipate when he lies down or rest[s] for 10-15 minutes."  F/U-CL-LTD-000266–67.  The care advice that was given to Plaintiff at that time was "ask[ing] the patient to modify his activities, specifically with work, to decrease the long hours of work as this will not benefit him in his recovery."  F/U-CL-LTD-000267.  Ultimately, Plaintiff's postoperative physical exam findings showed no evidence of lumbar radiculopathy as he had normal strength 5/5 with negative straight leg raise.  *See* F/U-CL-LTD-000433.  Furthermore, Plaintiff reported improvement in symptoms with his physical therapy program and was discharged on May 12, 2017.  *See id.*

These progress notes from Dr. Cunningham continued to show the contrast between Plaintiff's subjective complaints (and his preferences) and the objective medical evidence.  By May 17, 2017, it was noted that Plaintiff initially reported that "his symptoms have significantly improved" since his last visit.  F/U-CL-LTD-000278.  Plaintiff also reported that when he experiences some of the reported symptoms that stretching and "the back exercises taught to him in physical therapy provide[ ] him with significant relief of symptoms."  F/U-CL-LTD-000278.  Dr. Cunningham noted that Plaintiff "report[ed] that after long days of work, he begins to feel this

achiness which is relieved with rest.  As per patient request, a letter will be provided to him to

avoid longer hours of work, specifically taking call."  F/U-CL-LTD-000278.  Ultimately,

however, Plaintiff was reporting "intermittent symptoms in the left S1 distribution but reported L5

symptoms had resolved and [he] had regained his strength."  F/U-CL-LTD-000433.

On August 16, 2017, six months after Plaintiff's surgery, Dr. Cunningham noted that "I

still feel it is in [Plaintiff's] best interest to stay in a diminished work load (no call) for as long as

his SX persist (and his finances tolerate). . . .   I/We would like to see patient back in

[approximately] 6 months."  *See* F/U-CL-LTD-000225.  However, Dr. Cunningham also noted

that Plaintiff "demonstrated normal reciprocal gait and could easily transfer from sitting to

standing position in an unchanged exam."  F/U-CL-LTD-000433.

The independent medical exam ("IME") on August 8, 2017, conducted by Dr. George

Hochreiter, documented that Plaintiff reported he had difficulty being able to administer

anesthesia and position an individual over 300 pounds in weight on one evening when he was on

call because of less available help after hours.  *See* F/U-CL-LTD-000256–58.  Dr. Hochreiter

indicated that Plaintiff "is able to accomplish the duties of an anesthesiologist by modifying how

he does things."  *Id.*  It was noted that Plaintiff had some mild restrictions in lumbar range of

motion with some decreased sensation in the plantar aspect of his left foot without evidence of

motor weakness and normal deep tendon reflexes and negative straight leg raise.  *See id.*  It was

reported that he needed no further treatment such as physical therapy, massage therapy, household

help, transportation assistance, durable medical equipment, further diagnostic testing, or surgical

intervention.  *See id.*  Additionally, Sherry Roy, MSN, RN, who after a review of Plaintiff's

medical records, indicated that it was "[u]nclear if reduced workload ongoing is necessary given

physical exam findings are essentially normal; no further tx required; IME did not support reduced functional capacity."  F/U-CL-LTD-000371.

In January 2018, Dr. Richard Maguire sent a letter to Dr. Cunningham, asking if he agreed that Plaintiff had been capable of performing a full-time work capacity from August 11, 2016 to the present.  *See* F/U-CL-LTD-000405–6.  Dr. Maguire noted that the full-time demands of Plaintiff's occupation "as described in the national economy [require] exerting up to 20 pounds of force occasionally (up to 1/3 of an 8 hour workday), frequently (up to 2/3 of an 8 hour workday) up to 10 pounds; frequent standing, walking and occasional sitting.  It is reasonable that many physicians can work long, irregular and overnight hours as part of their occupational demands." *Id.*  Dr. Cunningham responded stating that "[a]s per the definition above it would be reasonable, but when I have evaluated Dr. Catania he described residual symptoms with similar level(s) of activity that would have made it very uncomfortable for him – Thus, my opinion is that he has been incapable of the work capacity.  *I can only go by what the patient reports*."  *Id.* (emphasis added).  Ultimately, Dr. Maguire noted, after a full review of Plaintiff's medical reports, that:

> In my medical opinion, the medical information reviewed does not document findings that would preclude the claimant from performing the full-time demands of his own occupation. . . . [T]here are no musculoskeletal, neurologic or functional abnormalities associated with his lumbar spine that would preclude the above-described full-time work capacity after 8/11/17 including the ability to take call.  He has no residual weakness in an L5 or S1 distribution.  The claimant has been able to work up to 45 hours per week since returning to work on 3/6/17 and has demonstrated the ability to perform the physical demands of his occupation during this timeframe.  The claimant has not reported [ ] the need for accommodations during the 45 hours he has been working during the week.  He successfully completed a physical therapy program for core strengthening and has reported the ability to control his symptoms with stretching, exercises and nonsteroidal anti-inflammatories.  Despite the claimant's reports of persistent symptoms, there has been no concern for recurrent disc herniation

19

> given no new diagnostics have been ordered and he was given a 6-
> month follow-up evaluation with Dr. Cunningham.  The claimant's
> reported symptoms were considered; however, the severity,
> existence, duration and frequency of his residual pain/numbness
> complaints that would prevent him from performing his
> occupational duties full-time more than 45 hours a week including
> being on call were not consistent with the clinical exams, diagnostic
> finding and his reported activity level.  Dr. Cunningham reported in
> the 08/16/17 follow-up note that it would be in the claimant's best
> interest to work in a diminish[ed] workload with no call as long as
> his symptoms persisted and his finances tolerate it; this suggests
> that if the claimant chose to increase his workload for financial
> reasons, he could do this at his discretion.

F/U-CL-LTD-000417–18.

The evaluation of designated medical officer ("DMO") Dr. Frank Kanovsky is consistent

with that of Dr. Maguire.  *See* F/U-CL-LTD-000425.  While Plaintiff claims that Dr. Kanovsky

"essentially offers no basis for disagreement with the treating orthopedist," Dkt. No. 47-1 at 24,

the Court finds that Dr. Kanovsky provided extensive support for his ultimate conclusions.

Specifically, Dr. Kanovsky indicated:

> Physical therapy last evaluation documents full range of motion
> lumbar spine-that is 5/2017 approximately 3 months postoperative.
> The IME exam documents a functional range of motion lumbar
> spine with negative straight leg raise, normal muscle strength lower
> extremities and decreased sensation plantar aspect left foot–per
> DMO, this may be a permanent finding.  The claimant requires only
> over-the-counter NSAIDs and occasional interval sent for
> symptoms.  The available records do not indicate the frequency of
> being on call and a when on call, how frequently the claimant would
> be required to do a case.  The claimant is already working 45 hours
> a week and the available information does not support the inability
> to work longer hours and take call in his specialty to support.
> Limited physical exams and absence of postoperative imaging
> studies that postoperative complaints and use of medication are not
> consistent with a severity of pain that would be expected to impact
> claimant's functional capacity as opined by [Dr. Maguire].

F/U-CL-LTD-000425–26.

Dr. Edwards L. Mills conduced an orthopedic independent medical evaluation of Plaintiff on January 24, 2018. *See* F/U-CL-LTD-000723–25, F/U-CL-LTD-000494–95. Dr. Mills concluded that while there "is evidence of a moderate orthopedic disability," Plaintiff was "capable of working and performing his daily activities with restrictions to be placed on no bending, lifting over 20 pounds and no twisting." F/U-CL-LTD-000494. Moreover, the report did not reflect any restrictions regarding limitations to the duration of functional activity for Plaintiff professionally. *See* F/U-CL-LTD-000723–25, F/U-CL-LTD-000494–95.

In response to Plaintiff's appeal of Defendant Unum's initial denial, Dr. Wade H. Penny, III, "completed a full review of the medical record, including prior clinical and medical reviews." F/U-CL-LTD-000772. Dr. Penny reached multiple conclusions, including that the findings in the medical record were not consistent with a level of impairment that would preclude sustained light physical demand level functions, that diagnostic imaging findings were not consistent with Plaintiff's alleged impairment, and that the findings on the independent medical examination and physical examinations submitted with the appeal were not consistent with Plaintiff's alleged impairment. *See* F/U-CL-LTD-000773–76. Dr. Penny cited to voluminous medical records to support these conclusions, including inconsistencies between certain medical source statements and medical records. *See id.* These conclusions were referenced in Defendant Unum's denial of Plaintiff's appeal. Ultimately, the Court agrees with Defendant Unum's conclusion that "the degree of symptoms reported on the medical source statements is inconsistent with [Plaintiff's] continued function as an anesthesiologist." F/U-CL-LTD-000783.

While Plaintiff contends that the Court should consider the medical opinion given by Dr. Ian Daly, *see generally* Dkt. No. 47-1, the Court agrees with Defendants in the appeal determination that the "opinion given by Dr. Daly on July 26, 2018 is not relevant to the

timeframe we are assessing for Dr. Catania's claim.  Furthermore, we confirmed with Dr. Daly's

staff that Dr. Catania has not had an office visit with Dr. Daly since June 8, 2016, until July 26,

2018, when he completed the medical source statement."  F/U-CL-LTD-000783.  Furthermore,

Dr. Penny noted multiple inconsistencies between Dr. Daly's statement and Dr. Cunningham's

statement, finding that these statements were not only inconsistent with each other, but also

inconsistent with other objective medical evidence.  *See* F/U-CL-LTD-000774.[1]

The record does not indicate that Defendant Unum ignored Plaintiff's subjective

symptoms, or any of the other evidence submitted by Plaintiff.  Rather, objective evidence,

including medical records and evaluations of multiple physicians and medical professionals,

supported Defendant Unum's determination that Plaintiff was not disabled to the extent claimed.

Defendant Unum was expressly permitted to rely on the objective evidence that it did "to guard

against fraudulent or unsupported claims of disability."  *Hobson v. Metro. Life Ins. Co.*, 574 F.3d

75, 88 (2d Cir. 2009).[2]  Indeed, "[i]t is not unreasonable for an insurer to credit objective evidence

---

[1] Plaintiff also highlights throughout his submissions the distinction between Plaintiff's treating physicians and the other medical professionals that evaluated Plaintiff's claim.  *See generally* Dkt. No. 47-1.  In any event, Defendant Unum was "not required to accord the opinions of a claimant's treating physician's 'special weight,' especially in light of contrary independent physicians' reports," *Hobson*, 574 F.3d at 90 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)), and "courts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation."  *Black & Decker*, 538 U.S. at 834; *see also Zoller v. INA Life Ins. Co. of N.Y.*, No. 06 Civ.112, 2008 WL 3927462, *13 (S.D.N.Y. Aug.25, 2008) (holding that "it is well settled that, in denying a claim for benefits under ERISA, the plan administrator may rely on the opinion of independent medical reviewers who have not conducted an examination of the applicant, even where the reviewer's opinion conflicts with that of the treating physicians").

[2] The Court finds it of interest that Defendants allege that Plaintiff "still practice as an anesthesiologist and continues to perform work as an anesthesiologist of the same general character as before his disability."  Dkt. No. 45-1 at 13.  Plaintiff has not disputed this allegation.

(continued...)

22

over subjective evidence." *Couture v. UNUM Provident Corp.*, 315 F. Supp. 2d 418, 432 (S.D.N.Y. 2004). It was Plaintiff's burden to proffer objective medical evidence to substantiate his subjective complaints – a burden Plaintiff failed to meet. *See Fortune v. Grp. Long Term Disability Plan for Employees of Keyspan Corp.*, 637 F. Supp. 2d 132, 143 (E.D.N.Y. 2009). In sum, Plaintiff's claim fails, and Plaintiff's doctors reiteration of Plaintiff's subjective complaints "do not convert those subjective complaints into objective data of Plaintiff's limitations." *Wedge v. Shawmut Design and Constr. Grp. Long Term Dis. Insur. Plan*, 23 F. Supp. 3d 320, 343 (S.D.N.Y. 21014).

Based on the administrative record, a reasonable factfinder could not conclude that Plaintiff was disabled within the meaning of the LTD Plan. *O'Hara*, 642 F.3d at 117. The medical evidence before the Court supported the conclusion that Plaintiff was not disabled from performing his occupation at full capacity, including the potential for overnight and on-call hours.[3] Accordingly, Plaintiff's motion for summary judgment is denied, and Defendants' motion for summary judgment is granted.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the

---

[2](...continued)
However, the Court will not go so far as to use it as an indication of Plaintiff's alleged disability. *But see London v. Berkshire Life Ins. Co.*, 71 Fed. Appx. 881, 883 (2d Cir. 2003) (examining professional activities of the insured at the time of the onset of their alleged disability to evaluated whether a plaintiff was "totally disabled," rather than having a "residual disability").

[3] The Court notes that it is documented that "overtime hours and on-call work are mandatory and are part of [Plaintiff's] earnings"; in a review of Plaintiff's payroll records, it appears that the last overtime entry for Plaintiff was in a March 22, 2017 paycheck, and the last on-call "beeper" entry was in a April 5, 2017 paycheck; both were after Plaintiff's surgery. *See* F/U-CL-LTD-00765.

applicable law, and for the reasons set forth herein, the Court hereby

**ORDERS** that Defendants' motion for summary judgment (Dkt. No. 45) is **GRANTED**;

and the Court further

**ORDERS** that Plaintiff's cross-motion for summary judgment (Dkt. No. 47) is

**DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close

this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision

and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: May 5, 2020
         Albany, New York

Mae A. D'Agostino
U.S. District Judge

24